## HICKMAN, WILLIAMS & CO., Inc., v. MURRAY TRANSP. CO.

District Court, S. D. New York.

Feb. 17, 1940.

Hill, Rivkins & Middleton, of New York City (Thomas H. Middleton, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for respondent.

CONGER, District Judge.

The libel in this case was brought to recover the sum of $20,000 by reason of the failure to deliver a cargo of pig iron pursuant to the terms of a bill of lading.

On or about October 27, 1937, at Troy, New York, there was delivered to respondent and laden on the deck of the scow Murray Glen a cargo of pig iron to be transported by the respondent on the Murray Glen to Jersey City, to be delivered at the Central Railroad of New Jersey piers.

Subsequently, the said scow, so loaded, left Troy bound for Jersey City, and on the early morning of October 28, 1937, was preceeding down the Hudson River in tow of a tug or tugs of the Cornell Steamboat Company. While so proceeding down the Hudson River the scow Murray Glen careened and dumped her cargo in the Hudson River resulting in the loss thereof. At the time there was a light wind blowing. There was no heavy sea. The river was normal, nothing unusual about it, a little choppy, with two or three inch waves.

Libelant claims to be the owner of the cargo, and contends that by reason of the above facts libelant has suffered a loss for which it should be compensated by the respondents.

There first must be decided certain motions made at the end of the libelant's case. (Respondent put in no proof.)

Respondent moved to strike out the testimony of Samuel L. Shober Jr., and Joseph F. Bauer, with regard to the purchase, sale and ownership of the cargo of pig iron. Libelant consented, in so far as the testimony of the witness Bauer was concerned. Libelant depends on the testimony of the witness Shober to prove ownership of the pig iron.

At this time it might be well to set down the facts showing the relationship of the parties directly and indirectly involved herein, and the transactions between them as testified by Shober. He testified that he was the eastern manager of Hickman, Williams & Company, Inc. (libelant), and Vice-President of the Troy Furnace Corporation (consignor); that Hickman, Williams & Company owned the cargo; that at the time the cargo was lost in the river libelant had sold it to Lukens Steel Company, F. O. B., that company's plant at Coatesville, Pa.; that the terms of sale from Troy Furnace Corporation to Hickman, Williams & Company was a discount of one-half of one per cent in ten days, thirty days net; that the proceeding by which Troy Furnace Corporation gets paid for the iron was to invoice Hickman, Williams & Company, as that was the only way in which Hickman, Williams & Company could get the money for its goods; that Hickman, Williams & Company had paid Troy Furnace Corporation for the pig iron in November, 1937, after delivery on board the scow;

and that no payment had been received from the ultimate purchaser, Lukens Steel Company.

The witness Shober also testified concerning the procedure in this transaction as follows: "We 'phone the Murray Transportation Company, and we say 'We wish to arrange for the floating to Jersey City or Central Railroad of New Jersey piers, or to Bridgeport—whatever the destination, so many thousands tons of pig iron in a barge load of 500 to 750 tons, what is your rate', and they quote us a rate, 'We will float your iron for you at so many dollars or cents per ton.' On the basis of that, we quote a price to our consumer or customer and we close the sale. We then arrange with our customer a satisfactory delivery date and we then go to the Troy Furnace Corporation and say 'We will have placed at your dock the barge of the Murray Transportation Company—which they name as the Murray Glen—on or about such and such a day, load this barge for our account'."

The bill of lading reads as follows:

"Murray Transportation Company: Received from Troy Furnace Corporation, October 27, 1937, at Troy, N. Y. on board barge: 'Murray Glen', Seven hundred and fifty-one and forty-five hundredths gross tons (751.45) more or less Champlain Basic Pig Iron.

"Consigned to: Lukens Steel Company, Coatesville, Pa.

"Via: Barge of Murray Transportation Co.

"To: Central R. R. of New Jersey Piers, Jersey City, N. J. For Reading Delivery.

"As per charter party agreement.

"Murray Transportation Corporation. R. Sovik."

■ I have come to the conclusion that the testimony of the witness Shober was proper and I therefore deny the motion of the respondent to strike his testimony in so far as it relates to the purchase, sale and ownership of the pig iron.

The witness was an officer of the company. He was familiar with the transactions, which were mainly oral. I think it was entirely proper for him to state that his company was the owner of the cargo. In this regard he was testifying to a simple fact, one within his knowledge. The witness knew the facts, and he was qualified to answer the question as to ownership.

■ In coming to this conclusion I am taking into consideration the fact that in Courts of Admiralty strict rules of evidence are not always followed, and they may, when justice requires it, take notice of matters not strictly proved and may receive in evidence testimony which might not be admissible in other courts. See Benedict on Admiralty, 5th Ed., section 381, and cases cited therein.

■ Having so ruled, under the evidence, I find that libelant was the owner of the cargo after it was loaded on the barge and while it was being transported down the Hudson River.

■■ It might be argued from the bill of lading, that the Lukens Steel Company was presumptively the owner of the cargo inasmuch as it was consigned to them. That being only a rebuttable presumption, it has been answered by the testimony of the witness Shober. Lukens Steel Company was not the owner of the cargo, as appears from the testimony, which clearly is to the effect that the agreement between Lukens Steel Company and Hickman, Williams & Company was for a delivery of the pig iron F. O. B. Coatesville, Pa. It is well settled in the law of sales that the title does not pass in such a contract until the goods are delivered to the designated place. Standard Casing Co. v. California Casing Co., 233 N.Y. 413, 135 N.E. 834.

Libelant has made out a prima facie case of ownership beyond the direct testimony of the witness Shober "That his company owned the iron". Shober's testimony showed clearly that Hickman, Williams had bought and paid for the iron. Indeed, the Troy Furnace Corporation was instructed to load the scow "for our (Hickman, Williams') account", and when the iron was loaded on the scow, Troy billed Hickman, Williams for its cost, and later received payment for the iron from Hickman, Williams & Company.

The next issue involved is the liability of the respondent. Respondent, in answering the libel, sets up two defenses: (1) The loading and capsizing of the Murray Glen were caused by reason of the fact that the Hudson River at the time was "very choppy", and (2) that carriage of the cargo on deck imposed all risks of loss on the cargo. However, the respondent at the trial rested at the close of libelant's case.

Prior to the trial, libelant moved for an interlocutory decree on the ground that the said defenses were insufficient in law.

Judge Coxe denied the motion and left the question open for the trial court. Libelant urges that on this issue the decision of Judge Coxe is the law of the case and binding here. I cannot follow the libelant on this argument. The decision was really against the libelant, although Judge Coxe clearly indicated how he felt.

I do however agree with Judge Coxe, and hold with him that the defenses in the answer are insufficient. On libelant's part it has proved a prima facie case and should have recovery. On the journey down the river the scow Murray Glen met with no peril of the sea. The testimony proved that there was nothing abnormal about the river; a light breeze blowing, a little "choppy". Certainly these conditions are no excuse for what happened, to wit: that the scow suddenly, without any apparent cause, careened and dumped her cargo.

Under the evidence I hold that this scow must be held to have been unseaworthy at the time of sailing and that also under the circumstances surrounding the sudden careening of the scow there is raised a presumption of negligence which the respondent is requested to explain. These presumptions have not been rebutted.

When the respondent accepted and undertook this contract of transportation, it impliedly, at least, warranted that the scow was seaworthy and having breached this warranty it should be held for the loss occasioned thereby.

The libelants are entitled to a decree for damages to its cargo, with interest and cost.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law, on notice, in accordance therewith.